**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| **TISHA MANNING, on behalf of herself and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 18-cv-00716** |
| **v.** | |
| **ADVANCED CARE SCRIPTS, INC.,** | |
| **Defendant.** | |

**DEFENDANT ADVANCED CARE SCRIPTS, INC.'S
MOTION TO COMPEL ARBITRATION, FOR ATTORNEYS' FEES,
AND TO DISMISS, OR ALTERNATIVELY, STAY PROCEEDINGS**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, Defendant Advanced Care Scripts, Inc. ("ACS") moves to compel Plaintiff Tisha Manning ("Ms. Manning") to submit her single federal claim in this case to individual arbitration, as the parties' valid and binding arbitration agreement requires. Because ACS provided Plaintiff with advanced notice of her obligation to arbitrate her claims, ACS also moves for an award of attorneys' fees incurred in bringing this motion, as it is only Plaintiff's recalcitrance that necessitated its filing. Lastly, ACS asks this Court to dismiss this case in its entirety with prejudice rather than stay it pending arbitration.

## I.      PRELIMINARY STATEMENT

This is an employment dispute that arises under the Fair Credit Reporting Act ("FCRA"). Ms. Manning, a former ACS employee, alleges that ACS improperly obtained a consumer report on her without first obtaining proper authorization to do so. ACS is a subsidiary of CVS Pharmacy, Inc. ("CVS"), however, and when CVS acquired ACS in 2016, Ms. Manning signed

the CVS Health Arbitration Agreement. By way of that agreement, she and CVS's subsidiaries—including ACS—agreed to arbitrate any disputes between them on an individual basis. It is well-established in the Eleventh Circuit that arbitration agreements like the one at issue here are enforceable. Thus, Ms. Manning must pursue her FCRA claim against ACS on an individual basis in arbitration.

ACS told Ms. Manning's attorney as much when he reached out before filing this lawsuit. But Ms. Manning's attorney ignored her arbitration agreement and filed the lawsuit anyhow. In doing so, he initiated needless legal proceedings in court, necessitating motion practice for no reason and wasting both the Court's and ACS's time and resources. The law entitles ACS to its attorney's fees in such situations, *i.e.*, where for no good reason, a party ignores her legal obligations and commitments with the sole effect of driving up her costs. To deter such vexatious conduct, the Court should order Ms. Manning's attorney to pay ACS its fees and costs incurred in moving to compel arbitration.

Finally, after the Court orders Ms. Manning to arbitrate her claims and awards ACS the fees it incurred in enforcing the parties' arbitration agreement, it should dismiss this action in its entirety and with prejudice. In the Eleventh Circuit, dismissal of claims ordered to arbitration is appropriate, particularly where (as here) all of a plaintiff's claims are subject to arbitration. Alternatively, the Court should stay the case pending arbitration.

## II.   STATEMENT OF FACTS

### A. <u>Ms. Manning Signs The Arbitration Agreement.</u>

In November 2016, Ms. Manning applied for a position with ACS in Orlando, Florida. (Compl. at ¶ 24, Doc. 2). ACS ultimately offered Ms. Manning the position for which she applied, provided (among other things) she successfully completed a background check. (Compl. ¶¶ 25-26).

2

Around the time of her application, CVS Pharmacy, Inc. was in the process of acquiring ACS, which eventually became a subsidiary of CVS Pharmacy, Inc. (Declaration of Howard Kobey, **Exhibit A**, "Kobey Decl." at ¶ 3). As part of ACS employees' transition to a new parent company, employees had to review and complete certain documents through ACS's onboarding system. (Kobey Decl. ¶ 4). Ms. Manning completed at least some of this paperwork in January 2017. (*Id.*)

ACS uses a web-based application called StarSource for recruiting, hiring, and onboarding. (Kobey Decl. ¶ 5). Applicants, offerees, and newly hired and/or re-hired employees receive routine onboarding documents, such as offer letters and the like, through StarSource. (Kobey Decl. ¶ 6). Individuals must then complete and return some of these documents, also via StarSource. (*Id.*)

One such document individuals review and acknowledge via StarSource is the CVS Health Arbitration Agreement. (Kobey Decl. ¶ 7). This is one of the documents that ACS employees had to review and complete as part of ACS's transition to CVS Pharmacy, Inc. (*Id.*) To complete this task, an employee had to log onto StarSource using unique credentials provided as part of the transition process. (Kobey Decl. ¶ 8). Once logged into StarSource, the employee then clicked on a link to the arbitration agreement, reviewed the arbitration  agreement electronically, and then had the option to print out the arbitration agreement in .pdf or hard copy form. (*Id.*) After reviewing the arbitration agreement, the employee then: (1) typed in his or her name, (2) typed in the date, and (3) used a mouse, mousepad, or touchscreen to sign his or her name to the document. (Kobey Decl. ¶ 9). By signing the CVS Health Arbitration Agreement, the employee acknowledged that he or she had carefully read, understood, and agreed to the terms of the Arbitration Agreement, including the provision that the employee and CVS

3

Pharmacy, Inc. and its affiliates, successors, subsidiaries, and/or parent companies agreed to arbitrate any and all disputes arising out of the employee's employment, provided the employee did not opt out of the Arbitration Agreement pursuant to the express instructions for doing so. (Kobey Decl. ¶ 10; *see also* Exhibit 1 to Kobey Decl. at p. 2 ¶ 9).

On January 26, 2017, Ms. Manning signed and dated the CVS Health Arbitration Agreement in this manner ("Arbitration Agreement," Ex. 1 to Kobey Decl.). The Arbitration Agreement emphasizes the terms to which Ms. Manning agreed, including the scope of her agreement to arbitrate, her waiver of class action rights, and her right to opt out of arbitration by notifying CVS in writing within 30 days. (*Id.*)

With respect to scope, the Agreement covers "any and all claims, disputes, or controversies" between Ms. Manning and, *inter alia*, CVS Pharmacy, Inc.'s subsidiaries, arising out of Ms. Manning's employment with said subsidiaries or the termination thereof. (*Id.* at ¶¶ 1-2). This expressly includes claims arising under federal statutes. (*Id.* at ¶ 2). Arbitration is to be administered by the American Arbitration Association ("AAA") pursuant to the AAA's most current Employment Arbitration Rules and Mediation Procedures. (*Id.* at ¶ 4.c).

The Arbitration Agreement also includes a waiver of one's right to bring claims on a class, collective, or representative basis. ("Class Action Waiver," *id.* at ¶ 6). In other words, the parties agreed "to bring any covered claims in arbitration <u>on an individual basis only</u>." (*Id.*) (emphasis in original).

Finally, the Agreement states: "Arbitration is not a mandatory condition of . . . employment." (*Id.* at ¶ 7). Employees may opt out of the Arbitration Agreement by mailing a written, signed, and dated letter stating that they wish to opt out within 30 days to CVS Health, P.O. Box 969, Woonsocket, RI 02895. (*Id.*) Ms. Manning conspicuously does not allege

4

that she opted out of the Arbitration Agreement, and ACS in fact has no record of Ms. Manning opting-out of it. (Kobey Decl. ¶ 13).

### B.   Ms. Manning Files Her Lawsuit In Court Even Though She Agreed To Arbitrate Claims Against ACS On And Individual Basis.

In early 2018, counsel for Ms. Manning, Luis A. Cabassa, contacted counsel for ACS regarding Ms. Manning's FCRA claim. By email dated March 19, 2018, counsel for ACS provided Ms. Manning—through Mr. Cabassa—with a copy of the Arbitration Agreement Ms. Manning had signed, notifying both Plaintiff and her counsel that Ms. Manning is subject to the CVS Health Arbitration Agreement. (Email, **Exhibit B**). Mr. Cabassa responded that he did not think the Arbitration Agreement was "enforceable as to class cases." (*Id.*)

On April 9, 2018, Ms. Manning filed this action in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Civil Division. (Compl., Doc. 2). On May 8, 2018, ACS timely removed the case to this Court, *i.e.*, the United States District Court for the Middle District of Florida, Orlando Division, because Ms. Manning alleges a violation of a federal statute, *i.e.*, the FCRA. (Doc. 1). Ms. Manning purportedly asserts her single federal claim not only on behalf of herself, but also on behalf of a putative nationwide class of employees and prospective employees of ACS "who were the subject of a consumer report that was procured by Defendant within five years of the filing of this complaint through the date of final judgment in this action, and who did not authorize the procuring of the report in writing, as required under [the FCRA]." (Compl. ¶ 33).

5

III.    MS. MANNING'S CLAIMS ARE SUBJECT TO ARBITRATION.

A. **Courts Must Enforce Valid Arbitration Agreements That Encompass The Disputes Before Them.**

The FAA mandates that federal courts compel arbitration of those claims parties have previously agreed to arbitrate. Under the FAA, an arbitration agreement is presumptively "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Indeed, the FAA embodies a "liberal federal policy favoring arbitration agreements," establishing "that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2).

Section 3 of the FAA states that if a party brings a matter "referable to arbitration" in court, then the court shall stay the action pending arbitration in accordance with the terms of the agreement to arbitrate. 9 U.S.C. § 3. Section 4, in turn, authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Like Section 3, Section 4 is mandatory, not discretionary:  "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not at issue, the court **shall** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* (emphasis added*)*.

The Supreme Court has made clear that the FAA applies in the context of employment agreements. *Circuit City v. Adams*, 532 U.S. 105, 119 (2001); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005) (discussing *Circuit City*). Further, "courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313 (11th Cir. 2002); *see also Circuit City*, 532 U.S. at 123; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

20, 26 (1991). Finally, in *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758, 1774 (2010), the Supreme Court reiterated the long-standing principle that parties are free to agree on the issues they wish to arbitrate and the "rules under which any arbitration will proceed."

In sum, as the Supreme Court has stated, the FAA "[b]y its terms . . . leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, the FAA requires a district court "to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles, and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

### B. The Arbitration Agreement Is Enforceable Under Florida Law, And Regardless, Ms. Manning Cannot Dispute Enforceability In This Court.

"A contract is made under Florida law when the three elements of contract formation are present: offer, acceptance, and consideration." *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 725 (M.D. Fla. 2000). Here, ACS offered Ms. Manning the Arbitration Agreement when it provided it to her in connection with CVS's acquisition of ACS. Ms. Manning accepted the Arbitration Agreement when she reviewed it, signed it, and chose not to opt out of the arbitration program. And, the parties' mutual promises to arbitrate, as memorialized in the Arbitration Agreement, manifest consideration under Florida law. *E.g.*, *Tranchant v. Ritz Carlton Hotel Co., LLC*, No. 2:10-CV-233-FTM-29, 2011 WL 1230734, at *4 (M.D. Fla. Mar. 31, 2011). Thus, the Arbitration Agreement is valid and enforceable.

But even if Ms. Manning challenges the validity or enforceability of the Arbitration Agreement in some respect, she cannot do it in this Court. The Arbitration Agreement includes a

delegation provision that specifically states that the parties agree to arbitrate "disputes arising out of or relating to the validity, enforceability or breach of this Agreement," with one exception for disputes about the Class Action Waiver provision. (Arbitration Agreement, ¶ 2, Ex. 1 to Kobey Decl.). Pursuant to this provision, any dispute about the validity or enforceability of Ms. Manning's Arbitration Agreement (other than a dispute regarding the Class Action Waiver provision) must itself go to an arbitrator to decide. *See, e.g.*, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (stating courts must enforce delegation provisions within agreements to arbitrate in accordance with FAA); *Elmore v. CVS Pharmacy, Inc.*, No. 216CV05603ODWASX, 2016 WL 6635625, at *3 (C.D. Cal. Nov. 9, 2016) (finding delegation provision in CVS arbitration policy "clearly and unmistakably demonstrates the parties' intent to arbitrate the issue of arbitrability," sending arbitrability dispute to arbitration).

Furthermore, the Arbitration Agreement incorporates the AAA's Employment Arbitration Rules and Mediation Procedures. These Rules also expressly delegate to the arbitrator the power to decide the "scope or validity of the arbitration agreement." Rule 6.a, AAA Employment Arbitration Rules and Mediation Procedures, **Exhibit C**, available at https://www.adr.org/sites/default/files/employment_arbitration_rules_and_mediation_procedures _0.pdf  (last visited May 15, 2018). As the Eleventh Circuit explained in *Terminix International Company, LP v. Palmer Ranch Limited Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005), parties who incorporate the AAA's rules thus provide that an arbitrator, and not a court, will decide questions about the validity and enforceability of their arbitration agreement.

In short, the Arbitration Agreement between Ms. Manning and ACS is valid and enforceable, and even if Ms. Manning wants to challenge its validity or enforceability (other than vis-à-vis the Class Action Waiver provision), she must do so in arbitration.

### C.  The FCRA Claim Falls Within The Scope Of The Arbitration Agreement.

The second consideration in determining whether to compel arbitration also mandates arbitration here.  Ms. Manning alleges ACS violated the FCRA by obtaining a consumer report on her in connection with her employment with ACS. (Compl. ¶¶ 24-32, 42-46). The Arbitration Agreement between her and ACS, in turn, encompasses "any claims, disputes or controversies . . . arising out of or related to [Ms. Manning's] employment" with ACS. (Arbitration Agreement ¶ 2, Ex. 1 to Kobey Decl.; Kobey Decl. ¶ 10). It also expressly encompasses claims brought under federal statutes (Arbitration Agreement ¶ 2, Ex. 1 to Kobey Decl.)—*e.g.*, claims brought under the FCRA. In short, because Ms. Manning's claim arises out of her employment with ACS, it falls within the scope of her agreement to arbitrate.

### D.  The Arbitration Agreement Requires Individual Arbitration.

As set forth above, there is a valid agreement to arbitrate that encompasses Ms. Manning's claim against ACS; as a result, the Court must order arbitration. But the FAA also requires that the Court enforce the Arbitration Agreement according to its terms. 9 U.S.C. § 4; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). By signing the Arbitration Agreement, the parties agreed to resolve disputes between them "on an individual basis only." (Arbitration Agreement ¶ 6, Ex. 1 to Kobey Decl.) (emphasis in original). Ms. Manning expressly waived her ability to bring claims on a class or representative basis. (*Id.*; *compare* Compl. ¶¶ 33-41, purporting to assert FCRA claim on behalf of Rule 23 class).

Ms. Manning's counsel will no doubt cite opinions of the Seventh and Ninth Circuits that hold that mandatory class action waivers required as a condition of employment violate the National Labor Relations Act ("NLRA") and are therefore unenforceable.[1] But this is not the law

---

[1] The issue of whether mandatory class action waivers violate the NLRA is currently on appeal before the United States Supreme Court. *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013, 1018

in the Eleventh Circuit. To the contrary, courts in the Eleventh Circuit have rejected the argument that the NLRA prohibits class or collective action waivers. *See Desimoni v. TBC Corp.*, No. 2:15-CV-366-FTM-99CM, 2017 WL 2116802, at *4 (M.D. Fla. Mar. 13, 2017), *report and recommendation adopted*, No. 2:15-CV-366-FTM-99CM, 2017 WL 1381600 (M.D. Fla. Apr. 18, 2017) (collecting cases).

In fact, the premise that class action waivers violate the NLRA is in direct conflict with the Eleventh Circuit's decision in *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014). In *Walthour*, the plaintiffs asserted a putative collective action pursuant to the Fair Labor Standards Act ("FLSA"). 745 F.3d at 1334-34 . They resisted arbitration on the grounds that the class action waiver provisions in their arbitration agreements rendered the agreements unenforceable. *Id.* The Eleventh Circuit rejected this argument, citing to a long line of Supreme Court precedent enforcing arbitration agreements even in the context of would-be group litigation. *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (enforcing arbitration agreement even though federal statute at issue authorized collective actions); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233-38 (2013) (holding courts cannot invalidate arbitration agreements on the grounds that they do not permit class arbitration of federal law claims)). Thus, district courts in the Eleventh Circuit have joined the numerous other district courts across the country that reject the argument that the NLRA prohibits class

---

(5th Cir. 2015), *cert. granted*, *N.L.R.B. v. Murphy Oil USA, Inc.*, 137 S. Ct. 809 (2017); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017); *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017). As discussed below, however, courts agree that non-mandatory class action waivers—*i.e.*, those within arbitration agreements that employees may opt-out of, like the Arbitration Agreement at issue here—do not violate the NLRA. *See, e.g.*, *Morris*, 834 F.3d at 983 n.4 (arbitration agreement with class action waiver does not violate NLRA) (citing *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1076 (9th Cir. 2014)).

waivers in arbitration agreements. *Lamour v. Uber Techs., Inc.*, No. 1:16-CIV-21449, 2017 WL 878712, at *11 n.13 (S.D. Fla. Mar. 1, 2017) (collecting cases).

As if this does not make the futility of Ms. Manning's argument clear enough, there is a key distinction between the Arbitration Agreement Ms. Manning signed and the agreements at issue in the minority Seventh and Ninth Circuit opinions: Ms. Manning's Arbitration Agreement was not a condition of her employment. "Five Circuits have squarely addressed whether and when a class and collective action waiver may violate the NLRA, and none have held that a class waiver in a voluntary arbitration agreement—e.g., one with an opt-out clause—violates the NLRA." *Lamour*, 2017 WL 878712, at *12. Thus, another court in this district recently held in a published opinion that where a plaintiff is not *required* to arbitrate her claims as a condition of employment, *i.e.*, where the plaintiff "had an absolute right to opt out" within 30 days of entering into the arbitration agreement, there is no way a class action waiver can render the arbitration agreement unenforceable. *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1328 (M.D. Fla. 2017).

Finally, it bears noting that individual arbitration is the only kind of arbitration to which ACS agreed. (Arbitration Agreement ¶ 6, Ex. 1 to Kobey Decl.). The Supreme Court has made abundantly clear that a court cannot compel class arbitration where, as here, the parties have not agreed to it. *Stolt-Nielsen*, 559 U.S. 662, 687.

In sum, there is no real question that Ms. Manning must arbitrate her claim against ACS on an individual basis. As a result, the Court must compel Ms. Manning to arbitrate in her individual capacity. *See, e.g.*, *Gregorius v. Npc Int'l, Inc.*, No. 216CV593FTM99MRM, 2016 WL 6996116, at *4 (M.D. Fla. Nov. 30, 2016) (holding "plaintiff's claims will proceed to arbitration as individual claims only and not on behalf of a class").

### E.  The Court Should Award ACS Attorney's Fees.

The clarity of the law on arbitration agreements with class action waivers in the Eleventh Circuit shows that Ms. Manning and her attorney have no justifiable basis for filing Ms. Manning's FCRA claim in court. This Court should deter such blatantly baseless conduct by shifting fees. It should hold Plaintiff's counsel responsible for the attorneys' fees ACS incurred in enforcing the parties' Arbitration Agreement—an Arbitration Agreement Ms. Manning had knowledge of well before she filed suit.

Two sources provide the Court with the authority to exact this justice. First, 28 U.S.C. § 1927 states that a court may require an attorney who "unreasonably and vexatiously" "multiplies the proceedings" to pay the "attorneys' fees reasonably incurred because of such conduct." Second, the Court has inherent authority to assess attorneys' fees in the face of bad faith that results in delay or disruption. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Doing so serves a "dual purpose:" it vindicates the Court by punishing those who waste scarce and valuable judicial resources, and it makes the prevailing party whole "for expenses caused by his opponent's obstinacy." *Id.* at 46.

Here, Ms. Manning agreed to arbitrate any claims against ACS, and ACS apprised her counsel of that fact well before she filed this lawsuit in court. (Email, Ex. B). She nonetheless filed this lawsuit, with no reasonable legal basis for ignoring the Arbitration Agreement (particularly in light of the fact that Ms. Manning filed her lawsuit in Florida, where the law on class action waivers in arbitration agreements is so clear). This forced ACS to file a motion to compel arbitration, thus wasting both the Court's time and resources and the time and resources of ACS. Where other plaintiffs have similarly resisted arbitration, courts have awarded fees to the defendants forced to enforce the arbitration agreements in court. *See, e.g.*, *Hunt v. Moore Bros., Inc.*, No. 15-CV-0433-MJR-SCW, 2016 WL 9454071, at *4 (S.D. Ill. Feb. 5, 2016)

(awarding fees because plaintiff's arguments resisting arbitration were "groundless, objectively unreasonable, and sanctionable"); *Parrott v. Corley*, No. 05-74552, 2006 WL 2471943, at \*3 (E.D. Mich. Aug. 24, 2006), *aff'd*, 266 F. App'x 412 (6th Cir. 2008) ("Plaintiff's counsel reasonably should have known that the claims asserted in the Amended Complaint fell with the scope of the broad arbitration clause contained in the parties' contract."). This Court should do the same here.

### F.  The Court Should Dismiss This Case.

Finally, after ordering individual arbitration and awarding ACS its attorney's fees, the Court should then dismiss this case in its entirety and with prejudice. Although Section 3 of the FAA provides for a stay of any lawsuit until arbitration has been completed, this rule "was not intended to limit dismissal of a case in the proper circumstances." *Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). In *Alford*, the court upheld the dismissal of an action with prejudice, reasoning that retaining jurisdiction by staying the action would serve no purpose because any post-arbitration remedies sought by the parties would be limited, and would not involve a merits adjudication of the controversy:

> Although we understand the [defendant's] motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.

*Alford*, 975 F.2d at 1164.

Similarly, in the Eleventh Circuit, district courts may dismiss claims compelled to arbitration. *See, e.g.*, *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) ("the FAA requires a court to either stay or dismiss a lawsuit" compelled to arbitration) (emphasis added); *Caley, et al. v. Gulfstream Aerospace Corporation, et al.*, 428 F.3d 1359, 1379 (11th Cir. 2005)

(affirming order compelling arbitration and dismissing of all of plaintiffs' claims); *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005) (same). Dismissal is particularly appropriate where a company's arbitration agreement affects putative class members. *Allen v. Hartford Fire Ins. Co.*, No. 616CV1603ORL37KRS, 2017 WL 3682346, at *4 (M.D. Fla. Aug. 25, 2017).

In this case, Ms. Manning only asserts one claim, and (as set forth above), that claim is indisputably subject to arbitration. As in *Alford*, retaining jurisdiction would thus serve no purpose. Moreover, in light of the fact that all ACS employees receive and review an arbitration agreement, putative class members are also likely subject to arbitration, further cutting against retaining jurisdiction. *Allen*, 2017 WL 3682346, at *4. For all of these reasons, the Court should dismiss this case. In the alternative, it should stay the case pending arbitration.

## IV.        CONCLUSION

For the foregoing reasons, the Court should compel Ms. Manning's FCRA claim to individual arbitration, award ACS its fees incurred in enforcing the parties' arbitration agreement, and dismiss this action with prejudice.

Dated:  May 15, 2018                                Respectfully submitted,

                                                    GREENBERG TRAURIG, LLP

                                                    s/ Katherine H. Molloy
                                                    Katherine H. Molloy
                                                    Florida Bar No. 33500
                                                    101 E. Kennedy Boulevard, Suite 1900
                                                    Tampa, FL  33602
                                                    Telephone: (813) 318-5700
                                                    Facsimile: (813) 318-5900
                                                    E-Mail: molloyk@gtlaw.com

                                                    James N. Boudreau
                                                    Pennsylvania Bar No. 77891
                                                    *Pro Hac Vice Application Forthcoming*
                                                    Christiana L. Signs

Pennsylvania Bar No. 317851
*Pro Hac Vice Application Forthcoming*
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
E-Mail: boudreauj@gtlaw.com
E-Mail:  signsc@gtlaw.com

*Attorneys for Defendant Advanced Care Scripts, Inc.*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g) of the United States District Court of the Middle District of Florida, the undersigned certifies that the parties conferred regarding the relief sought herein, and the parties were unable to conciliate the issues.

s/ Catherine H. Molloy
Catherine H. Molloy

## CERTIFICATE OF SERVICE

I, Catherine H. Molloy, hereby certify that on May 15, 2018, I caused a true and correct copy of the foregoing Motion to Compel Arbitration, for Attorney's Fees, and to Dismiss, or Alternatively, Stay Proceedings, to be served via Email and U.S. Mail on the following counsel of record:

Luis A. Cabassa
Florida Bar Number: 0053643
WENZEL FENTON CABASSA, P.A.
1110 N. Florida Avenue, Suite 300
Tampa, FL 33602
Tel: 813-379-2565
Fax: 813-229-8712
Email: lcabassa@wfclaw.com
Email: twells@wfclaw.com

*Attorneys for Plaintiff*

s/ Catherine H. Molloy
Catherine H. Molloy
